UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| **TAMARA STAR COMES OUT**, a/k/a | ) | Civil No. 05-5075 |
| **TAMARA STAR**, | ) | |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S BRIEF IN SUPPORT OF** |
| | ) | **MOTION TO EXCLUDE EXPERT** |
| -vs- | ) | **TESTIMONY OF** |
| | ) | **DEWEY J. ERTZ, Ed.D.** |
| **MOHAMMED AHSAN**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant has identified psychologist Dewey Ertz to testify as an expert witness in this case. The report of Dr. Ertz is marked Exhibit 1 and attached to the Affidavit of Counsel in Support of Motion to Exclude Expert Testimony of Dewey J. Ertz, Ed.D.

Dr. Ertz admits in his expert report that he has never met Tamara Starr. (See Exhibit 1) Nevertheless, he formulated three opinions after reviewing deposition transcripts and a few medical records. (See Exhibit 1) Exhibit 1 lists three opinions:

1. The first opinion is that the allegations Tamara has made against Dr. Ahsan are unusual in nature based upon my training and experience in completing evaluations and providing treatment to sex offenders.

2. My second opinion is that Tamara transferred adverse feelings she had for her immediate supervisor, Father Paul Coehlo, at Red Cloud Indian School, towards Dr. Ahsan.

3. The final opinion is that Tamara presents susceptibility to using elaboration and projection of responsibility in her dysfunctional coping process and as part of her denial system related to substance abuse.

It is the exclusive province of the jury to determine credibility. Weighing evidence and

determining credibility are tasks exclusive to the jury, and an expert should not offer an opinion about the truthfulness of witness testimony. U.S. v. Rouse, 111 F.3d 561, 571 (8th Cir.), cert. denied, 522 U.S. 905 (1997). Opinions that are nothing more than vouchers for or attacks on credibility do not assist the jury and are not admissible. U.S. v. Azure, 801 F.2d 336, 339-41 (8th Cir. 1986); Nichols v. American Nat. Ins. Co., 154 F.3d 875, 882-883 (8th Cir. 1998).

Expert testimony is permissible when scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. Before admitting this expert testimony, the trial court must insure that it is scientifically valid – that it is both reliable and relevant. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). The relevancy of expert testimony depends upon whether it can properly be applied to assist the trier of fact to decide facts in issue. Daubert, 509 U.S. at 592-93. Expert testimony is not helpful if it draws inferences or reaches conclusions within the jury's competence or within an exclusive function of the jury. Nichols v. American Nat. Ins. Co., 154 F.3d at 883.

Dr. Ertz should not be permitted to comment on Tamara Starr's reliability "in the guise of a medical opinion," U.S. v. Whitted, 11 F.3d 782, 785-786 (8th Cir. 1993), and "this impressively qualified expert's stamp" of untruthfulness on Tamara Starr's story goes beyond the scope of proper expert testimony. U.S. v. Azure, 801 F.2d 336, 340 (8th Cir. 1986). Because "[e]xpert evidence can be both powerful and quite misleading," a trial court must take special care to weigh the risk of unfair prejudice against the probative value of the evidence under Fed. R. Evid. 403. Daubert, 509 U.S. at 595. It is plain error to admit testimony that is a thinly veiled comment on a witness's credibility. See Whitted, 11 F.3d at 786-87; Nichols, 154 F.3d at 884.

2

The opinion testimony of Dr. Ertz is a thinly veiled attempt to answer the very question at the heart of the jury's task – can Tamara Starr be believed?  The proffered expert testimony creates a serious danger of confusing and misleading the jury, causing it to substitute the expert's credibility assessment for its own common sense determination.  The jury will hear the testimony first-hand and will be equipped with several hundred years of life experience as it makes the credibility determination in this case.  The jury is fully capable of making this decision.  The jury should not be required to consider the opinions of a paid professional who has never met the witness whose credibility he attacks, albeit indirectly and in complex psychological terms.

Dr. Ertz was questioned in his deposition concerning his first opinion that these allegations are "unusual."  Explaining his meaning, he said "I'm only suggesting that [a sexual assault committed in the presence of an 8 year-old child] is an unlikely scenario.  We all know that things unlikely can still take place, but the probability is fairly low."  Ertz Depo. pg. 16, lines 20-23.

Dr. Ertz testified further:

Answer:  What I'm saying is an offense of this nature with a witness present is unlikely to occur, whether it's this offense or any other type of offense that might be alleged.

Question:   And because you believe this is unlikely to have occurred, you are really commenting upon the veracity of Tamara Starr, aren't you?

Mr. Duffy:  Objection.  It's a misstatement of the witness's testimony.

Answer:  That's not my intent.

Question:  It's the effect of your testimony, is it not?

Answer:  I don't know how my testimony might be received by someone, but I still have to say the reality that I know of sexual offending, for a sexual offender to proceed to do something offensive with someone present who could be a witness of their action is

unlikely.  It's unlikely is what I said.

Ertz Depo. pg. 17, line 16 through page 18, line 7.

In his second area of opinion testimony, Dr. Ertz intends to testify that Tamara's negative feelings toward her employment supervisor were transferred to Dr. Ahsan.  This opinion testimony on the topic of transference might be of some academic interest, but it does not bear on any of the issues in the case confuses the real issues and invites the jury to engage in rank speculation.  Dr. Ertz unequivocally denied that Tamara's allegations of sexual misconduct were related to those negative feelings she felt toward her employer.  "I would hesitate to use the word related because I'm not sure that you can take that jump.  That's a pretty big jump.  But what I'm indicating is that her perceptions of Dr. Ahsan were negative to begin with so it's very easy for her to add more negative perceptions on top of those.  That's a state of her view of the individual who she really doesn't know." Ertz Depo. pg. 31, lines 15-21.

Dr. Ertz admitted that the psychological phenomenon of transference would not affect Tamara's ability to discern whether the physician was touching her breast.  He also admitted that this transference phenomenon would not affect Tamara's ability to perceive whether the doctor had fondled her nipple.  Ertz Depo. pg. 34, lines 6-23.  The second opinion of Dr. Ertz is not relevant because it provides no assistance to the jury in the resolution of these issues.

The third opinion is yet another critique of Tamara's candor couched in vague psychological terms.  He claims in his report that "Tamara presents susceptibility to using elaboration and projection of responsibility in her dysfunctional coping process…."  Dr. Ertz comments in his report that Tamara had supposedly given inconsistent descriptions of this assault to her friends.  He states in his report: "This is the type of elaboration that would be expected for

4

someone with dependent personality features who is seeking to have others care for them and meet their needs through using victimization to meet this goal. *Such elaboration is not usually a purposeful attempt to deceive or be dishonest*; rather it is an extension of dependency needs that remain unmet." (emphasis added)

If allowed to elaborate upon his third opinion, Dr. Ertz would likely explain to the jury, as he does in his report, that persons with Tamara's personality characteristics "routinely seek excessive nurturing and support from others." He would then make the leap, as he does in his report, and claim that Tamara "displays these patterns as she relates different information to various people about her allegations against Dr. Ahsan." Quickly assuming the role of advocate, Dr. Ertz would likely identify selected portions of deposition testimony which supposedly contain inconsistent descriptions of the assault. He would then return to the witness chair as a mental health professional and explain to the jury that these inconsistent versions of the assault are the product of a medical diagnosis and are not really lies after all. He would explain to the jury, as he does in his report, that Tamara's testimony is nothing more than an innocent byproduct of a personality disorder.

What Dr. Ertz is really saying is that people with dependent personality characteristics are likely to elaborate upon the truth. That opinion should not be uttered in this court of law.

## CONCLUSION

Plaintiff respectfully requests that the Court enter its Order excluding the testimony of Dewey J. Ertz, Ed.D.

Dated this 25th day of January, 2008.

**BARKER WILSON LAW FIRM, LLP**

By:  /s/Michael A. Wilson
    Michael A. Wilson
    *Attorney for Plaintiff*
    730 South Street
    P.O. Box 1795
    Rapid City, SD 57709-1795
    (605) 719-5195

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies he served a copy of **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF DEWEY J. ERTZ, Ed.D.,** upon the persons herein next designated, all on the date below shown, by electronic mailing to the following:

Daniel F. Duffy
Bangs, McCullen, Law Firm
333 West Blvd.
Rapid City, SD 57701

G. Verne Goodsell
Gunderson, Palmer, Goodsell & Nelson
P.O. Box 8045
Rapid City, SD  57709

Dated this 25th day of January, 2008.

         /s/Michael A. Wilson
        Michael A. Wilson

*This document was electronically filed.*